FILED
2010 Jan-25  PM 12:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

Exhibit 4

Affidavit of Thomas L. Black
and Exhibits Thereto

Roel Vaughn, et al. v.
Hyster Company, Inc., et al.
4:09-cv-00570-VEH

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| ROEL and JEAN VAUGHN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 4-09-cv-0570-VEH |
| | ) | |
| HYSTER COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF THOMAS L. BLACK, Ph.D, P.E.

Before me, the undersigned notary public, personally appeared Thomas L. Black, Ph.D., P.E., who, after being duly sworn, states as follows:

My name is Thomas Black. I am over the age of 19 years and have personal knowledge of the facts contained herein. I am a practicing Safety and Human Factors Engineer with over 35 years of experience. I hold a Bachelor of Mechanical Engineering degree from General Motors Institute, a Master of Engineering and a Ph.D. with a specialty in Safety and Human Factors from Texas A&M University. I was employed by General Motors at the GM Technical Center in the Safety and Human Performance Laboratory. I was the Manager of Safety and Human Factors at Rohr Industries. Also I have taught Safety and Human Factors courses at San Diego State University, and The University of California at San Diego. Currently I am President of California Safety Associates, Inc. A copy of my curriculum vitae is attached hereto as Exhibit C-1.

I have been asked to conduct a review of the accident involving Roel Vaughn, which occurred on March 2, 2007 at the Federal Mogul plant in Jacksonville, Alabama. At that time,

Mr. Vaughn was operating a Hyster Model N45XMR3 standup narrow aisle forklift. According to Mr. Vaughn's testimony, he was driving the standup forklift towards the far end of aisle "N" "O" with forks forward looking for his next pick up. The forklift was in the central portion of the aisle with a direction straight in the aisle. He testified that the forklift was about 2 feet from the storage rack on the right so that he could see the identification tag on the product in the storage rack. He testified, "If you get any closer you can not read the tags." He maintained his left hand on the steering wheel device. He said he stopped the forklift and held the label in his right hand forward in the lift truck operator's compartment and bent down looking to the right side of the forklift for a matching number on the palletized products in the metal storage racks. Mr. Vaughn can not recall anything that occurred after that until after the accident occurred.

In conjunction with my review of this case, I have reviewed the documents and materials set forth in Exhibit C-2. Additionally, I conducted an inspection of the standup forklift and accident site on May 19, 2009. At that time, I observed certain forklift modifications made by Federal Mogul following the accident, which included the addition of a screen and bumpers to the right side of the standup forklift. The bumpers are offset from the right side of the operator's compartment by 4 inches. The screen and bumpers together make the forklift 4.25 inches wider. The screen wire had openings of 1.375 inches wide and 2.75 inches high using wire that has a diameter of .125 inches. The screen covers from the side of the operator's compartment up to the overhead protector. The width of the screen is 24 inches long along the side which leaves a gap of 5 inches open from the front of the operator's compartment.

2

It is well recognized that an operator should never place an arm outside the operator's compartment when the fork lift is operational. OSHA Standards states in 29 CFR 1910.178(m) Truck Operations (4) "The employer shall prohibit arms and legs from being placed outside the running lines of the truck.

The American National Standards Institute (ANSI) Standards B56.1 - 2000 5.2.3: "Keep arms and legs inside the operator's designated area or compartment. Do not put any part of the body outside the operator compartment of the truck."

The Hyster Operating Manual states the following:

(Page 9) "Keep arms and legs inside the operator's compartment"

(Page 36) "Any time the lift truck is moving, keep arms, legs, etc., inside the operator's compartment. Arms and legs outside the machine can be injured when passing obstructions." The OSHA regulations require that the contents of the forklift training program include all of the safety concepts included in the operator's manual.

The Hyster warning label is mounted on the forklift, so an operator has visual access to warnings which includes the following:

"WARNING" "Failure to observe the following rules can cause

serious injury or death . . . "

"Keep arms and legs inside the operator's compartment."

"USE COMMON SENSE"

The Federal Mogul "Powered Industrial Truck Training" includes the following:

1.      All body parts must remain inside the running lines of the PIV (Power Industrial

        Vehicle) when in operation. Operation is defined as any time the ignition key is

        in the ON position, even when the unit is stopped."

3

An operator should always practice keeping arms and legs in the operator's compartment. Keeping the left hand on the steering wheel and the right hand on the joystick keeps an operator's hands and arms in the operator's compartment. According to Mr. McAlister's testimony (P.63) the investigation team from Federal Mogul concluded that Mr. Vaughn's own failure to heed the workplace safety rules was the cause of his injuries.

The Federal Mogul Accident Report stated "PIV Training Materials specifically covers the unsafe operating habit of extending body extremities outside the running lines of the PIV." (Wendell Day deposition P.71).

Mr. Vaughn took a test following his forklift training on February 25, 2004. He received a 100% correct grade on the test where he correctly responded that it is not okay to have feet and hands outside the running lines of the equipment, for a second question he responded that a careful driver does not have his legs outside the truck.

The Hyster standup forklift provides protection to the operator's arms because the operator's left hand is on the steering wheel control and the operator's right hand is on the joystick which controls among other things fore and aft movement. With the operator's hands occupied, the arms will not be outside the operator's compartment to be injured.

Mr. Vaughn testified that he had stopped the forklift and was holding a "label" in his right hand in a position forward (towards the forks) with his left hand on the steering wheel control. He said he leaned forward and down to look for a matching product number in the rack. He recalls nothing more regarding the accident after that. If Mr. Vaughn maintained that position, this accident would not have occurred. As long as Mr. Vaughn keeps his arm straight ahead, his arm will not be outside the compartment. Most importantly, Mr. Vaughn would have to move his arm outside of the operator's compartment in order for this accident to occur.

4

Following the accident, Federal Mogul built and installed screens and bumpers on the right side of the forklift and to its rear. This system was installed only on one of the standup forklifts - R-90. There are several problems noted with the modification.

1.     The lightweight screen will not withstand impacts which would allow for intrusion into the operator's compartment. Operators may have a false sense of security that the screen will protect them and then be injured by intrusion and/or broken screen wires.

2.     The screen produces a right side visual interference since the operator is so close to the screen and visual targets would be moving past the screen. This produces the "picket fence" visual condition. Dan Hayes testified (P.18) the screen impacted his ability to see where he was going and what he was doing.

3.     Since there is an opening forward of the screen, some operators may be encouraged to lean forward to look to the right. This would bring operators out of the operator's position.

4.     The rubber bumpers which increase the length and width of the standup forklift, reduces the utility of the narrow aisle forklift. It will not be as nimble working in narrow aisles. It will not turn in the same tight radius because of the increased length and width.

5.     In general, testimony indicated that operators at Federal Mogul do not like the barrier design and do not select the R-90 forklift to drive.

6.     OSHA requires that all user modifications to forklifts must be approved by the forklift manufacturer. Federal Mogul did not contact Hyster regarding this modification and did not receive approval to add the bumpers and side screen.

Mr. Vaughn started operating forklifts at Federal Mogul in December 2004. Mr. Vaughn testified that he may have glanced at the Hyster operator's manual. However, he said

he was not sure if he had ever seen the manual on his forklift R-90 even though the Hyster forklift has a plastic holder for the manual so that it can be seen. Hyster provides instructions to keep a manual on the forklift.

Mr. Vaughn also testified he did not read the manual during his forklift training and he did not recall seeing the manual before. He testified it may have been on his truck R-90 but he was not sure if it was on the truck or not. If he never read the operator's manual, it did not help him understand the need for keeping your arms inside the operator's compartment.

Based on my review of this matter, I have reached the following opinions within a reasonable degree of engineering certainty:

1.    OSHA and ANSI Standards require operators to keep their arms and legs inside the operator's compartment. Mr. Vaughn violated these standards.

2.    Hyster provided warning for operators to keep their arms and legs inside the operator's compartment. This is in the operator's manual which is placed in a visible container on the standup forklift and on warning labels placed on the standup forklift for the operator to read.

3.    The warnings provided by Hyster associated with the operation of the standup forklift are clear, sufficient and appropriate.

4.    Mr. Vaughn was trained by Federal Mogul to keep his arms and legs inside the operator's compartment of the standup forklift.

5.    Mr. Vaughn failed to keep his right arm inside the operator's compartment at the time of the accident. Trained forklift operators know to keep their arms and feet inside the operator's compartment.

6

6.      The screen added to the right side of the Hyster forklift by Federal Mogul following the accident can lead to other accidents and will reduce the utility of the standup forklift.  Changes made to a forklift must be authorized by the manufacturer.  Hyster was not aware of the changes and did not authorize them.  Therefore, the Federal Mogul modification is not an approved change.

7.      If Mr. Vaughn had removed his foot from either the brake or sensor pad when he turned around to look for the label in the rack, this accident would have been avoided.  Any inadvertent control contact with the joystick would not have resulted in powered movement of the standup forklift.

8.      The joystick is protected from inadvertent body contact by the control console.

9.      Had Mr. Vaughn kept his arm inside the operator's compartment as he explained in his testimony, this accident would not have occurred.

10.     The actions Mr. Vaughn described in his testimony would not have caused this accident to occur.  His body would have been inside the operator's compartment.  Mr. Vaughn's testimony of his actions fails to explain how the accident occurred.

11.     The standup forklift manufactured by Hyster is not defective and is a reasonably safe standup forklift.

FURTHER AFFIANT SAYETH NOT.

Thomas L. Black, Ph.D., P.E.

7

STATE OF CALIFORNIA                    )

COUNTY OF San Diego            )

Sworn to and subscribed before me this the 15 day of January, 2010.

_____
Notary Public

My commission expires:_____

K:\GWR\NACCO Materials Handling Group\Vaughn, Roel & Jean v. Hyster Company\Pleadings\Affidavit - Black.wpd



TANIA L. FAIRCHILD
Commission # 1861108
Notary Public - California
San Diego County
My Comm. Expires Aug 14, 2013

8

## CERTIFICATE OF RETENTION

As the filer of this document, I hereby certify that I currently hold the original signature document which has been duly executed and notarized. I further certify that I shall retain the hard copy of this document containing the original signature for one year after exhaustion of the time to appeal final resolution of this action or issuance of a mandate from the Court of Appeal.

_____
George W. Royer, Jr.

# California Safety Associates, Inc.
South Los Morros, P.O. 729
Rancho Santa Fe, CA 92067-0729
(858) 756-1235
FAX (858) 756-1235

January 2009

**RESUME**
**Thomas L. Black**

## CAREER OBJECTIVES

Continue to provide safety and human factors expertise. The increased demand upon manufacturers to protect customers has created the necessity for professional assistance in evaluating products and systems.

## EDUCATION

Undergraduate School:
General Motors Institute – Flint, Michigan Bachelor of Mechanical Engineering – June, 1966

Graduate School:
Texas A&M University – College Station, Texas
Master of Engineering Degree – August, 1967
Operations Research Specialty

Graduate School:
Texas A&M University – College Station, Texas
Ph.D., August 1971
Human Factors and Product Safety Specialty

## WORK EXPERIENCE

May 1976 to Present:
California Safety Associates, Inc. (California Corp. since July 1978, previously independent consultant)
Title: President

Consultant specializing in Product Safety & Human Factors.

1. Consulting arrangements with industry and government providing human factors analysis, hazard analysis, product safety evaluations and independent research.

2. Accident investigation and reconstruction.

3. Safety Standard compliance reviews.

Nov. 1974 to May 1976
Rohr Industries, Inc., P.O. Box 878, Chula Vista, CA.
Title: Manager of Safety and Human /factors

Exhibit C-1

Thomas L. Black

Page 2

## WORK EXPERIENCE (Continued)

Rohr is a diversified manufacturer of aerospace, ground transportation and industrial systems equipment. Rohr has been a major supplier of transit buses, subway rail trains and specialized people movers.

Product Safety and Human Factors is responsible for all transportation and industrial systems products. Dr. Black had total responsibility for organizing and managing the department. The products included transit buses, delivery trucks, passenger trains, subway trains, people mover systems, automated warehousing systems, and material handling equipment.

Department activities included the following:

1. Provide design input to engineering during product development.

2. Identify high risk problem areas and perform hazards analysis to determine if the risks are acceptable.

3. Perform design reviews of products to insure safety and human factors acceptability.

4. Assure compliance with government regulation.

Aug. 1971 to
Nov. 1974:

GM Design Staff
General Motors Technical Center, Warren, Michigan Title: Senior Research Engineer

U.S. automotive manufacturer. Department duties included the following:

1. Perform applied human factors experimentation and evaluate product designs for safety and human factors compliance. The products included automobiles, trucks, buses, heavy duty machines, and home appliances.

2. Represent Design Staff on the General Motors Safety subcommittee.

3. Develop a computerized system for determining vision obscuration in automobiles.

Thomas L. Black
Page 3

## WORK EXPERIENCE (Continued)

**March 1968 to September 1970:**

International Computer Graphics, Inc., 2100 N. Akard, Dallas, TX Title: Director of Education

Business – Computer Software organization servicing the apparel industry.

Duties included the following:
1. Computer software sales.
2. Director of school for computer programming and computer support services.

**September 1961 to September 1966:**

AC Spark Plug Division of General Motors Corporation. N. Dort Hwy., Flint, Michigan
Title: Cooperative education student. Equivalent of three years on-the-job experience.

Areas of experience included:
1. Dynamometer testing
2. Machine repair
3. Personnel
4. Manufacturing production
5. Machine design
6. Tool room scheduling by Resource Leveling
7. Methods engineering

## TEACHING EXPEREINCE

**May 1981 to 1991:**

Guest lecturer in Mechanical Engineering Department, San Diego State University, San Diego

**September 1976 to May 1981**

San Diego State University, San Diego, California Title: Part-time faculty.

Courses taught:
1. Industrial Safety – Undergraduate
2. Accident Causation – Graduate
3. Human Factors in Machine Design. Undergraduate

**May 1996 to May 1999**

University of California - San Diego Title: Part-time faculty Systems Safety Engineering Risk Management

Thomas L. Black
Page 4

## AWARDS

Member of Alpha Pi Mu Honorary Society
Awarded a General Motors Fellowship for graduate study at Texas A & M
University. Certified Professional Ergonomist by Board of Certification in
Professional Ergonomics

## PROFESSIONAL SOCIETIES

- Professional Safety Engineer registered in the State of California
- Member of the Human Factors and Ergonomics Society
- Systems Safety Society
- American Society of Safety Engineers
- American Society for Testing and Materials
- Society of Automotive Engineers
- Past member of the SAE Automotive Safety Committee, Vision Committee, and
  Truck and Bus Safety Committee
  Past President of the San Diego Chapter of the Human Factors Society
- Served as Chairman of the SAE Controls Location Committee which
  administered the Vehicle Research Institute's Controls Location
  Research Contract

## PUBLICATIONS

Resource Leveling at AC Spark Plug, Thesis, 1966

"Press Loading Optimization of Inventory and Capital Investment", Report - Texas
A&M University, 1967

"An Apparatus for Measuring Dynamic Visual Acuity", Test Engineering and
Management Magazine, p. 18-19 August 1970

Human Dynamic Manual Effort as a Function of Static Manual
Effort, Dissertation, Texas A&M University, June 1971

"Bus Design - Elderly and Handicapped", presented to the California Assembly
Transportation Committee, Co-author C. C. Hill, for Rohr Industries, October
1975

"Bus Design for the Elderly and Handicapped", SAE Congress, Detroit, Co-
author J. A. Mateyka, February 1976

"Development of Recommendations to Improve Controls Operability", Black,
Woodson, and Selby - Report #DOT-IIS-6-01445, Washington, DC, US Department
of Transportation, 1977

"Misunderstanding Human Factors", Hazard Prevention, P. 9 May/June 1978

Thomas L. Black
Page 5

PUBLICATIONS (Continued)

"Issues in Transportation for the Handicapped", Proceedings of the Safe Society, San Diego, CA Fall 1978

"Passive Seat Belt Design and Standards", Proceedings of the HPS 22nd Annual Meeting, Co-author W. Woodson, Detroit, Michigan, October 1978, p. 528

"Seat Belt Effectiveness Perception in Heavy Truck Accidents", SAE West Coast International Meeting, Universal City, California, August 1986

"Anatomy of Accidents Following Tire Disablements", SAE Congress, Detroit, Co-author Ernest Z. Klein, March 1999

## MATERIAL PROVIDED

I have been provided the following documents to review for the investigation.

The Complaint
Photographs from Federal Mogul's Inspection of the Accident.
Hyster Initial Disclosures
Medical Records
Plaintiff Initial Disclosures
Plaintiff's Response to Interrogatories & Request for Production
Documents from Federal Mogul in Response to Subpoena

Photos of Mr. Vaughn Produced by Plaintiff
Photos of Powered Industrial Vehicle Produced by Plaintiff
Video of Powered Industrial Vehicle in Operation Produced by Plaintiff

Videos:
Standup Rider Operator Safety Video
Can I Drive It Now?  Forklift Safety Video
Operator Order Selector Safety Video
The Color of Safety – William Shatner
Standup Rider Operation Safety – Crown

Federal Mogul Documents:
Wendell Day Photos of R-90 Forklift
Federal Moguel Employee Handbook
Employee Forms
4 safety videos used in training Mr. Vaughn
Powered Industrial Truck Training
PIV Behavioral Risk Assessment
Operator Training – Exams
Job Safety Analysis
Hyster Report
Barloworld Report & Records
Vaughn employment records
Federal Mogul manuals from R-90
Federal Mogul Van Terry notes
Federal Mogul Anthony Light notes
Federal Mogul Dan Hayes notes
Federal Mogul 1611: Safety- Last Time Recordable Investigations
Federal Mogul Barloworld work notes
Federal Mogul Photos
Federal Mogul Vaughn records
Federal Mogul Photos of forklift and accident area

Exhibit C-2

Depositions:
Roel Vaughn & Exhibits
Jean Vaughn
Wendell Day & Exhibits
Steve Cantrell
Danny Hayes & Exhibits
Anthony Light & Exhibits
Bobby McAlister

NACCO Documents:
Hyster N 45XMR3 Parts Manual
Hyster Narrow Aisle Operating Manual
Hyster Guide for Users of Industrial Lift Trucks
Hyster Narrow Aisle Single Reach Technical Guide
Hyster Narrow Aisle Single Reach & Straddle Trucks
Hyster Build Prints
Hyster Procuction Build List
Hyster Functional Test Report
Hyster U.S. Industrial Truck Acknowledgement
NACCO Order # Production Environment
Hyster Acknowledgement – Order
NACCO Report Unit History

Standards:
ANSI B56.1 2000 Safety Standard
UL 583 Electric Battery-Powered Industrial Trucks
OSHA 29 CFR 1917 & 1918 published 8/27/1999