FILED

2010 Aug-04  AM 10:13
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

ROEL and JEAN VAUGHN,      )
      )
      Plaintiffs,      )
      )
v.      )      Civil Action No.:  4:09-cv-0570-VEH
      )
HYSTER COMPANY, INC., et al.,      )
      )
      Defendants.      )

BRIEF OF DEFENDANT
NACCO MATERIALS HANDLING GROUP, INC.,
<u>IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT</u>

George W. Royer, Jr.
P. Scott Arnston
LANIER FORD SHAVER & PAYNE, P.C.
2101 West Clinton Avenue, Suite 102
Huntsville, AL 35805
(256) 535-1100
Fax:  (256) 533-9322
gwr@lanierford.com
psa@lanierford.com

Attorneys for the Defendant
NACCO Materials Handling Group, Inc.,
successor by merger to Hyster Company

## TABLE OF CONTENTS

Statement of Undisputed Material Facts................................... 1

Argument............................................................. 6

I.   Vaughn's Proffered "Expert" Testimony Is Unreliable and Fails to Meet the Standards Established by the Supreme Court In Daubert; Accordingly, the Opinions of Such Purported Experts Cannot be Considered the Type of Affirmative Proof Necessary to Support His Claims........................................................ 6

II.  NACCO Is Entitled to a Summary Judgment on the Claims under the Alabama Extended Manufacturer's Liability Doctrine, Because Mr. Vaughn Has Failed to Meet His Burden of Proof.  Also, He Was Contributorily Negligent, in Any Event.............................. 7

     A.   Vaughn Failed to Prove That the Product Had a Defect, and That this Defect Caused His Injury. ......................... 8

     B.   Vaughn Also Completely Failed to Prove His Claim for "Failure to Warn."...................................... 17

     C.   Although it Is Unnecessary to Reach this Issue, Vaughn Was Guilty of Contributory Negligence  ....................... 19

III. Vaughn Also Completely Failed to Prove His Claims for Breach of Implied Warranties.............................................. 21

IV.  NACCO Also Is Entitled to a Summary Judgment on Jean Vaughn's Claim for Loss of Consortium. ................................ 23

Conclusion........................................................... 24

Certificate of Service................................................ 25

STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      This is a diversity case in which the plaintiff, Roel Vaughn, asserts several Alabama state law claims against NACCO Materials Handling Group, Inc. ("NACCO") (Complaint).

2.      NACCO is the successor to Hyster Company ("Hyster"), the entity named as the defendant in the complaint.  (Notice of Removal, ¶ 1 and Exhibit A).

3.      Mr. Vaughn sustained an arm injury while operating a lift truck manufactured by Hyster.  (Complaint, ¶¶ 2-3).

4.      Vaughn asserts claims against NACCO (as Hyster's successor) under the Alabama Extended Manufacturer's Liability Doctrine, and for breach of the implied warranties of fitness and merchantability.  (Complaint, ¶¶ 7-9).

5.      Mr. Vaughn's wife, Jean Vaughn, asserts a derivative claim for loss of consortium.  (Id., ¶ 10).

6.      Mr. Vaughn was employed by Federal Mogul Corporation as a materials handler and was performing his job duties at its Jacksonville, Alabama plant when the subject accident occurred on March 2, 2007.  (Complaint, ¶ 3; Exhibit 1: Deposition of Roel Vaughn [hereinafter "Vaughn Depo."], p. 90).

7.      The accident occurred while Vaughn was operating a Hyster "standup" fork lift truck, which he had regularly operated since December of 2004.  (Vaughn depo., pp. 27, 103-104, 106, 143 and Ex. 26-A to Vaughn Depo.).

8.      According to Vaughn, he maneuvered the lift truck into an aisle, and stopped the vehicle to the left of some shelves containing automotive parts. (Vaughn Depo., pp. 210-214).

9.      Vaughn then looked down and to his right toward two pallets on the floor, to locate parts he needed to lift with the truck and move onto another pallet. (Id., pp. 220, 224-25, pp. 153-54).

10.     While holding in his right hand a label identifying the parts he needed to move, Vaughn leaned to his right to get a closer look at the pallets on the floor. (Id., pp. 214-215, 223, 228).

11.     Vaughn does not remember how far he leaned, testifying that "I just remember leaning over." (Id., pp. 228-229).

12.     Vaughn testified that "[o]ne second I was looking at this label, and the next second I knew something bad had happened, and I was turned like sideways, and my arm was dangling." (Id., pp. 231-32).

13.     Vaughn's right arm apparently struck a portion of the shelving and was severely injured. (Id., pp. 245-247 and Exhibit 26-M to Vaughn Depo.).

14.     Vaughn does not know how the accident occurred. (Vaughn Depo., pp. 30, 267-268).

2

15.     Vaughn does not believe that the vehicle moved on its own.  (Vaughn Depo., pp. 268-269).

16.     Mr. Vaughn is "fairly sure" that an operating manual was located on the lift truck, but he does not recall reading it.  (Vaughn depo., pp. 104-105 and Exhibit 4 to Vaughn Depo.).

17.     In a section warning operators to "use common sense," the operating manual warned that operators should "[k]eep arms, legs, and head inside operator's compartment."  (Operating Manual, Defendant's Exhibit 4 to Vaughn depo., p. 6).

18.     Mr. Vaughn also acknowledged that there were various warning labels on the vehicle.  (Vaughn Depo., pp. 110-111).

19.     Vaughn testified that "I saw them on there, and I'm sure I read part of it, but I don't know if I read letter for letter."  (Id., p. 111).

20.     Like the operating manual, the warning labels instructed operators to "[k]eep arms, legs and head inside operator's compartment."  (Vaughn depo., Defendants Exhibits 10A-10E).

21.     In February of 2004, approximately three years prior to the accident, Mr. Vaughn completed a Federal Mogul "Lift Truck Operators Training Course Written Exam."  (Vaughn depo., pp. 115, 119-121; Exhibit 24 to Vaughn Depo.).

22.     In the "true or false" portion of the exam, Vaughn indicated that the following statement was false:  "[I]t is OK to have your feet or hands outside the running lines of the equipment." (Vaughn depo., p. 121; Exhibit 24 to Vaughn Depo., p. 6).

23.     Vaughn testified that he knew he could be injured if he did not keep his arms inside the operator's compartment:

> Q.     You knew it was not okay to have your hands and feet outside of the operator's compartment of the vehicle, did you not?
>
> A.     Yes.
>
> * * * *
>
> Q.     . . . [I]f your arms and legs were outside of the operator's compartment, you could possibly injure them if you ran into something?
>
> A.     Yes, sir.
>
> Q.     And you were aware of that?
>
> A.     Yes.

(Vaughn depo., pp. 121, 95).

24.     NACCO retained three experts to provide opinion testimony in this case. (Affidavits of Chimbaugona Mkandawire, PhD, CAISS, Michael Rogers, PE, and Thomas Black, PhD, PE, Exhibits 2, 3 and 4).

4

25.    Chimbaugona Mkandawire, who holds a PhD in Bioengineering, performed a biomechanical investigation of the accident and has concluded and opined that Vaughn could not have sustained his injury unless his right hand and forearm were outside the operator's compartment of the truck lift.  (Affidavit of Chimbaugona Mkandawire, Ex. 2, p. 3).

26.    Michael Rogers, a Licensed Professional Engineer, investigated the accident and has concluded and opined that Vaughn violated product warnings by failing to keep his right arm inside the operator's compartment, that the accident was due to operator error and not to any failure of the lift truck, that the lift truck had no defect, and that the lift truck was safe for its intended use.  (Affidavit of Michael Rodgers, Exhibit 3, pp. 5-6).

27.    Thomas Black, a Safety and Human Factors Engineer, conducted an accident review and has concluded and opined that Hyster provided appropriate warnings for operation of the vehicle, that Vaughn violated the warnings and OSHA and American National Standards Institute (ANSI) standards by failing to keep his arm inside the operator's compartment, that the accident would not have occurred if Vaughn had kept his arm inside the operator's compartment, and that the lift truck had no defect.  (Affidavit of Thomas Black, pp. 4-6).

5

ARGUMENT

I.      Vaughn's Proffered "Expert" Testimony is Unreliable and Fails
        to Meet the Standards Established by the Supreme Court in
        Daubert; Accordingly, the Opinions of Such Purported Experts
        Cannot be Considered the Type of Affirmative Proof Necessary
        to Support His Claims

NACCO anticipates that Vaughn's response to this motion for summary judgment will be to point to the opinion testimony of two witnesses he has retained to opine as to the reasonableness of the design of the lift truck in question, Emmett E. ("Buddy") Gamel and Thomas F. Talbot.  However, as set forth in the motion to exclude filed contemporaneously with NACCO's motion for summary judgment, the opinions of Mr. Gamel and Mr. Talbot are completely inadmissible because the qualifications and methods utilized by these witnesses do not satisfy the standards established by Federal Rule of Evidence 702 and the Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

As discussed below, it is clear that expert testimony is required in complex products liability cases like the one at bar.  The Eleventh Circuit has explained on multiple occasions that where expert testimony is required in a products liability case, the exclusion of such testimony on Daubert grounds will properly lead to the granting of summary judgment.  See, e.g., Allison v. McGhan Med. Corp., 184 F.3d 1300,

6

1320 (11th Cir.1999) (affirming grant of summary judgment to defendant in products liability case based upon exclusion of plaintiff's expert witnesses under <u>Daubert</u>); <u>Rink v. Cheminova, Inc</u>., 400 F.3d 1286, 1295-96 (11th Cir. 2005) (same); see also <u>Mize v. HJC Corp</u>., 2006 WL 2639477, at * 6 (N.D. Ga. Sept. 13, 2006) ("Indeed, without Johnson's [expert] testimony, the only basis for finding a design defect in the helmet is that plaintiff was injured while using it. Plaintiff's injury is not a sufficient basis, in and of itself, for concluding that the CL-12 Helmet is defective.").

Accordingly, since Vaughn was required to adduce admissible expert testimony in support of his claims but has failed to do so, NACCO is entitled to summary judgment for the reasons set out more fully below.

II.    NACCO Is Entitled to a Summary Judgment on the Claims under the Alabama Extended Manufacturer's Liability Doctrine, Because Mr. Vaughn Has Failed to Meet His Burden of Proof. <u>Also, He Was Contributorily Negligent, in Any Event</u>

Roel Vaughn asserts product liability and breach of warranty claims against NACCO, the manufacturer of the lift truck he was operating when he was injured. Vaughn asserts these claims even though (1) he can only speculate as to how the accident happened, (2) he could not have been injured if he had heeded the manufacturer's warnings by keeping his arm inside the vehicle's operating compartment, and (3) he has no expert testimony that (a) the vehicle had any defect,

7

that a defect caused his injury, or (b) that there was a safer alternative design that would have prevented the injury.  In short, there is *no* evidence to support Vaughn's claims.  Although it is unnecessary to reach the question whether an affirmative defense would also bar a recovery, the evidence actually shows that the accident resulted from Vaughn's own negligence in operating the lift truck.  For the multiple reasons discussed below, NACCO is entitled to a summary judgment on all claims.

> A.   Vaughn Failed to Prove That the Product Had a Defect, and That this Defect Caused His Injury

To prove a claim under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), Mr. Vaughn had to show the following:

> [That] *he suffered injury or damages* to himself or his property by one who sold *a product in a defective condition unreasonably dangerous* to the plaintiff as the ultimate user or consumer, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.

Beam v. Tramco, Inc., 655 So.2d 979, 981 (Ala. 1995) (citation omitted) (emphasis added).  See also Graham v. Sprout-Waldron & Company, 657 So.2d 868, 870 (Ala.

1995).  Vaughn alleges that he was injured because the lift truck had a design defect, but he has presented *no admissible evidence* to support this claim.

The Alabama Supreme Court has repeatedly emphasized that "[m]ere proof that an accident and injuries occurred is not enough to establish a prima facie case under the AEMLD." Kirk v.  Garrett Ford Tractor, Inc., 650 So.2d 865, 867 (Ala. 1994). See also Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328, 1332-33 (Ala. 1991) ("[T]he '[f]ailure of a product does not presuppose the existence of a defect.' The fact that someone was injured while using a product does not establish that the product was unreasonably dangerous when put to its intended use. . . .  The doctrine of *res ipsa loquitur* is not applicable in products liability cases — mere proof of the accident itself is not proof of a defective product; rather, the plaintiff must present some evidence of a defective product in order to make out a prima facie case in a products liability action.") (citation omitted); Townsend v. General Motors Corp., 642 So.2d 411, 415 (Ala. 1994) (a "manufacturer of a product is not an insurer against all harm that may be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product . . . . Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown.")

9

Rather than relying merely on evidence that an accident happened and an injury occurred, a plaintiff asserting an AEMLD claim must produce evidence to "affirmatively show a defect in the product." Brooks v. Colonial Chevrolet-Buick, 579 So.2d at 1332. See also Roberts v. NASCO Equipment Co., Inc., 986 So.2d 379, 386 (Ala. 2007) ("In an AEMLD claim 'the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition.' ") (citation omitted).

A defendant moving for summary judgment on an AEMLD claim does *not* have the burden of establishing that the product was "non-defective." Roberts, 986 So.2d at 386. Rather, the defendant has only the following "limited burden" in moving for summary judgment:

> [I]n a claim alleging a violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), " [w]hen the basis of a summary-judgment motion is a failure of the nonmovant's evidence, the movant's burden . . . is limited to informing the court of the basis of its motion — that is, the moving party must indicate where the nonmoving party's case suffers an evidentiary failure.' "

Id. (citations omitted). See also Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999) (noting that a defendant "need not prove a negative in order to prevail on a motion for a summary judgment"). This is consistent with federal law providing that, where a motion for summary judgment is based on the plaintiff's failure to present evidence establishing one or more elements of a claim, the defendant is

10

required only to "point out" the absence of the required evidence.  See, e.g., <u>Celotex</u> <u>Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986); <u>Danskine v. Miami Dade Fire</u> <u>Department</u>, 253 F.3d 1288, 1293 (11th Cir. 2001).

Here, Mr. Vaughn has presented no admissible evidence at all that the lift truck he was operating was defective.  To prove a defect in a product, expert testimony ordinarily is required.  See, e.g., <u>Bloodsworth v. Smith & Nephew, Inc.</u>, 476 F. Supp. 2d 1348, 1353 (M.D. Ala. 2006) (citing pertinent Alabama cases); <u>Brooks v. Colonial</u> <u>Chevrolet-Buick</u>, 579 So.2d at 1332.  Courts applying Alabama law have required plaintiffs to present expert testimony in any case where laymen could not, in the absence of expert testimony, reasonably infer that the product was defective and that the defect caused the plaintiff's injuries or damages.  See <u>Cooper v. Toshiba Home</u> <u>Tech. Corp.</u>, 76 F. Supp. 2d 1269, 1276 (M.D.  Ala. 1999) ("When the product in question is of a complex and technical nature such that a lay juror could not, in the absence of expert testimony, infer that a defective condition of the product caused the product's failure and caused the resulting injury to the plaintiff, expert testimony is a necessary component of a plaintiff's case.")

These decisions, many of which involved products far less complex than a lift truck, demonstrate that Vaughn unquestionably was required to present competent expert testimony to support his claim that the lift truck had a design defect.  See, e.g.,

11

Donnelly v. Club Car, Inc., 724 So.2d 25, 27-28 (Ala. Civ. App. 1998) (holding that the plaintiffs were required to present expert testimony to establish that the windshield on a golf cart was defective); Britt v. Chrysler Corp., 699 So.2d 179, 181 (Ala. Civ. App. 1997) (holding that the plaintiff was required to present expert testimony to establish that the airbag system on a car was defective); Graham, 657 So.2d at 874 (holding that the plaintiff was required to present expert testimony to establish that mechanical vibrators should have been installed in bins holding corn by-products); Townsend 642 So.2d at 415 (holding that the plaintiffs were required to present expert testimony to establish that the braking system on a truck was defective); McClain v. Coca-Cola Company Distributor, 2009 WL 2985693 at *6 (M.D. Ala. Sep. 16, 2009) (ruling that the plaintiff had to present expert testimony to establish a defect in a Coca-Cola can); McCreless v. Global Upholstery Company, Inc., 500 F. Supp. 2d 1350, 1358 (N.D. Ala. 2007) (ruling that expert testimony was required to establish a defect in a chair); Bloodsworth, 476 F. Supp. 2d at 1353 (ruling that expert testimony was required to establish that a component of a prosthetic hip replacement system was defective); Carmichael v. Samyang Tires, Inc., 923 F. Supp. 1514, 1518 (S.D. Ala. 1996) (ruling that expert testimony was required to establish that a tire was defective).

In addition to proving a defect, a plaintiff asserting a design defect claim also must prove that "a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]." Haney v. Eaton Electrical, Inc., 528 F. Supp. 2d 1262, 1269 (N.D. Ala. 2007) (citation omitted).  See also Howze v. Toyota Motor Corp., 2000 WL 210260 at *2 (S.D. Ala. Jan. 24, 2000) ("Under the AEMLD, a plaintiff has the burden of establishing (1) the defective condition of the product; and (2) a reasonable, practical, alternative design, by means of expert testimony.").

The existence of a safer, practical, alternative design must be proven by admissible evidence that:

> (a)  [T]he plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
>
> (b)  taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

Haney 528 F. Supp. 2d at 1269 (citation omitted).  See also General Motors Corp. v. Jernigan, 883 So.2d 646, 662 (Ala. 2003).

13

When the case involves a complex product, like the lift truck in this case, the burden of proving a safer alternative design cannot be satisfied without competent expert testimony.  See, e.g., <u>Townsend</u>, 642 So.2d at 423 ("We fail to see how a lay juror could reasonably be expected to determine whether a garbage compaction unit with riding platforms designed behind the cab would be safer than a design with the riding platforms mounted on the rear, without the assistance of expert testimony."); <u>Howze</u>, 2000 WL 210260 at *2 ("[B]ecause [the plaintiff] has not offered *any* expert testimony, he cannot meet his burden of demonstrating through expert testimony that a reasonable or practical alternative design exists for the subject 1994 Toyota Corolla.") (emphasis in original).

Again, *res ipsa loquitur* does not apply in this case.  The burden was on Vaughn to prove a defect in NACCO's product, that this defect caused his injury, and that there was a safer, practical, alternative design that would have prevented the injury.  Vaughn completely failed to meet this burden, presenting no admissible expert evidence (and indeed, no other admissible evidence at all) to establish a defect, causation, or the existence of a safer alternative design.  The failure to support a claim of defective product design with admissible expert testimony, or the exclusion of such testimony by the Court, requires the dismissal of the claim on summary judgment. See, e.g., <u>Carmichael</u>, 923 F. Supp. at 1523 (in tire defect case, "[t]he exclusion of

14

[plaintiffs' expert]'s testimony effectively bars the plaintiffs from proceeding with their negligence and wantonness causes of action against the defendants."), *rev'd*, 131 F.3d 1433 (11th Cir. 1997), *overruled sub nom.* Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999); Cook v. Sumbeam Prods., Inc., 365 F. Supp. 2d 1189, 1193 (N.D. Ala. 2005) (granting summary judgment to defendant after excluding plaintiff's expert based on Daubert challenge); Donnelly v. Club Car, Inc., 724 So.2d 25, 28 (Ala. Civ. App. 1998) (plaintiffs' claim that windshield was defective was properly dismissed on summary judgment where plaintiffs failed to support claim with expert testimony).

In cases involving alleged defective forklift design - which is the issue before the Court in this case - courts routinely dismiss plaintiffs' claims in the absence of admissible expert testimony.  See, e.g., Dhillon v. Crown Controls Corp., 269 F.3d 865 (7th Cir. 2001) (in products liability and negligence action, affirming district court's exclusion of experts on Daubert grounds and then dismissing an unsupported plaintiff's claim that forklift was defectively designed); Dancy v. Hyster Co., 127 F.3d 649, 653 (8th Cir. 1997) (affirming district court's grant of summary judgment after plaintiff's expert was excluded under Daubert and holding plaintiff needed expert testimony because forklift design was matter beyond the common understanding of a jury); Bourelle v. Crown Equip. Corp., 220 F.3d 532 (7th Cir.

15

2000) (affirming exclusion of plaintiff's expert in forklift design case and resultant summary judgment on plaintiff's claims against manufacturer); <u>Berry v. Crown Equip. Corp.</u>, 108 F. Supp. 2d 743, 757 (E.D. Mich. 2000) (after exclusion of plaintiff's expert in a "rear door" case, plaintiff could not establish a *prima facie* case of design defect or a viable alternative design); <u>Anderson v. Raymond Corp.</u>, 340 F.3d 520, 524-25 (8th Cir. 2003) (affirming grant of summary judgment after district court's exclusion of plaintiff's experts on ground that expert testimony was required to establish *prima facie* case of produce defect).

In this case, in view of the absence of admissible expert testimony, Plaintiff Vaughn's claims are ripe for dismissal based upon the authorities cited above. "[A] forklift, is a complicated piece of equipment that consists of many intricate mechanical parts. Therefore, a jury would not be able to simply look at its design and determine whether or not it was defective. Rather, a competent expert's reliable testimony is necessary to assist the jury in understanding the complex safety issues involved in forklift design. . . ." <u>Ortiz v. Yale Materials Handling Corp.</u>, 2005 WL 2044923 at *11 (D.N.J. Aug. 24, 2005); *see also* <u>Brown v. Raymond Corporation</u>, 318 F. Supp. 2d 591, 595-96 (W.D. Tenn. 2004) (forklift is complex product requiring plaintiff to support design defect theory with expert testimony).

As also discussed above, NACCO does not have to "prove a negative" or *dis*prove Vaughn's case in order to obtain summary judgment. Nonetheless, NACCO presented the opinions of three experts, whose undisputed testimony affirmatively proves that the lift truck was not defective and that the accident was caused by operator error. As a matter of law, NACCO is entitled to a summary judgment on Vaughn's claim that the lift truck at issue in this case was defective.

> ### B.    Vaughn Also Completely Failed to Prove His Claim for "Failure to Warn."

Vaughn's complaint also includes an allegation that NACCO "failed to provide adequate warnings as to the potential of injuries such as occurred to the plaintiff." (Complaint, ¶ 7). While a defendant may be liable under the AEMLD for a "failure to warn," a duty to warn of danger posed by a product "arises only when the product is unreasonably dangerous when put to its *intended use*." State Farm Fire & Casualty Co. v. J. B. Plastics, Inc., 505 So.2d 1223, 1227 (Ala. Civ. App. 1987) (emphasis in original). Here, there is no evidence whatsoever that the lift truck was dangerous, much less unreasonably dangerous, when put to its intended use. The undisputed evidence instead is that this is a safe vehicle, when operated properly.

There also is no duty to warn of obvious dangers. See, e.g., Ex parte Chevron Chemical Company, 720 So.2d 922, 925 (Ala. 1998); Gurley v. American Honda

Motor Co., 505 So.2d 358, 361 (Ala. 1987).  Even though the danger of placing an arm outside the operator's compartment when driving a lift truck alongside shelving should be obvious, the vehicle's operating manual and warning labels expressly warned operators to "use common sense" and keep their arms inside the operating compartment.  Vaughn had the burden of proving that the warnings provided by NACCO were inadequate, Haney, 528 F. Supp. 2d at 1269, and he presented no such evidence.

Finally, Vaughn also had the burden of proving that, even if the warnings provided by NACCO were inadequate, an adequate warning would have been read and heeded and would have prevented the accident.  See, e.g., Sears, Roebuck & Co. v. Harris, 630 So.2d 1018, 1030 (Ala. 1993).  Vaughn also presented absolutely no evidence to meet this burden.  In fact, the undisputed evidence instead shows that Vaughn did not read the operating manual that was kept with the vehicle, and did not bother to read the various warning labels "letter for letter."  As with his design defect claim, Vaughn has completely failed to prove his claim for failure to warn.[1]

---

[1] In any event, the warning issue in this case is moot.  Plaintiff Vaughn testified that he knew that "it was not okay" if he failed to keep his arms inside the operator's compartment, and further testified that he was aware that if his arms or legs were outside the operator's compartment he could injure them if he ran into something. (Vaughn depo., pp. 121, 95)

C.   Although it Is Unnecessary to Reach this Issue,
Vaughn Was Guilty of Contributory Negligence

As discussed above, Mr. Vaughn indisputably failed, in several respects, to meet his burden of proof on an AEMLD claim, and NACCO is entitled to a summary judgment for that reason alone.  Although it is unnecessary to consider whether Vaughn's claims also are barred by an affirmative defense, it should be pointed out that the evidence establishes that Vaughn was guilty of contributory negligence.

The Alabama Supreme Court has held that, to establish contributory negligence as a matter of law at the summary judgment stage, the defendant must show "that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred."  Burleson v. RSR Group Florida, Inc., 981 So.2d 1109, 1112 (Ala. 2007) (citation omitted).  That court also has explained, however, that "[d]irect evidence of such an appreciation of danger is not required if the evidence admits of no conclusion except that the plaintiff must have appreciated the hazard involved."  Id. at 1113, quoting Serio v. Merrell, Inc., 941 So.2d 960, 965 (Ala. 2006).  In other words, "[i]t is enough if the plaintiff understood, or *should have understood*, the danger posed."  Id. (emphasis in original).

In affirming summary judgments based on a finding of contributory negligence, the Alabama Supreme Court has held, as a matter of law, that the plaintiff *should*

19

*have* appreciated the danger of "pulling out from a stop sign onto a public highway traversed by two-way traffic having the right-of-way and traveling at highway speeds, without making a final observation to one's left sufficiently attentive to detect in the daylight the impending arrival of a truck of such size as to be inescapably obvious to one taking the precaution of making such an observation," Serio, 941 So.2d at 965, and that the plaintiff *should have* appreciated the danger presented by handling a revolver "with the manual safety disengaged and with a cartridge chambered in line with the hammer and the firing pin." Burleson, 981 So.2d at 1114.

In this case, it should have been obvious to any reasonable person that there was a danger of serious injury if the person did not keep his arm within the operator's compartment of a lift truck while operating the truck near other large objects.  Mr. Vaughn himself acknowledged that he knew he could be injured if he "ran into something" while an arm or leg was outside the operating compartment.  Even if Vaughn did not consciously appreciate that danger at the moment of the accident, he certainly *should have* appreciated the danger.  Again, it is unnecessary to reach this issue, but Vaughn's contributory negligence is an additional reason why NACCO is entitled to a summary judgment.

### III.   Vaughn Also Completely Failed to Prove His Claims for Breach of Implied Warranties

The complaint also alleges that NACCO breached the implied warranties of merchantability and fitness for a particular purpose.  As with his other claims, however, Mr. Vaughn has failed to present any evidence at all to prove his warranty claims.

To prove a claim for breach of the implied warranty of merchantability, a plaintiff must establish (1) the existence of the implied warranty; (2) a breach of the warranty; and (3) damages proximately resulting from the breach.  See, e.g., Rose v. General Motors Corp., 323 F. Supp. 2d 1244, 1248 (N.D. Ala. 2004); Chase v. Kawasaki Motors Corp., USA, 140 F. Supp. 2d 1280, 1288 (M.D. Ala. 2001).  There is no evidence at all to satisfy the last two elements of Vaughn's burden of proof.

For goods to be merchantable, they must be "fit for the ordinary purposes for which they are used." Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1198 (11th Cir. 2004), quoting Allen v. Delchamps, Inc., 624 So.2d 1065, 1068 (Ala. 1993).  See also Daimler-Chrysler Corp. v. Morrow, 895 So.2d 861, 864 (Ala. 2004) ([T]he term [merchantability] means that a good sold carries with it an inherent soundness which makes that good suitable for the purpose for which it was designed.") (citation omitted).

21

Here, Vaughn has not shown that the lift truck was not fit for the ordinary purposes for which such a product is used.   As already discussed, there is no admissible evidence at all that there was any defect in the lift truck, or that Vaughn was injured by any defect.   Rather, excluding the unreliable and inadmissible testimony of his proffered "experts," Vaughn has merely presented evidence that an accident occurred while he was operating the truck.   As a matter of law, this evidence is totally insufficient to support a claim for breach of the implied warranty of merchantability.

Vaughn also claims that NACCO breached the implied warranty of fitness for a particular purpose.   This warranty arises under the following circumstances:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

§ 7-2-315, Code of Alabama (1975).

As with his warranty of merchantability claim, Vaughn cannot recover for breach of the warranty of fitness without proof of the warranty's existence, a breach of the warranty, and a resulting injury.   See, e.g., Chase, 140 F. Supp. 2d at 1289. The fitness warranty exists only if "(1) [t]he seller has reason to know the buyer's

22

particular purpose; and (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment." Id.

Vaughn has failed to present evidence that the warranty of fitness arose, that the warranty was breached, *or* that he was injured as a result of any breach. There is no evidence that NACCO knew the "buyer's particular purpose" in purchasing the lift truck, that NACCO knew the buyer was relying on its skill or judgment to furnish appropriate goods, or that the buyer actually relied on NACCO's skill or judgment. Also, even if the warranty of fitness had arisen, there is *no* evidence that NACCO breached the warranty and injured Vaughn.

IV.   NACCO Also Is Entitled to a Summary Judgment on Jean Vaughn's Claim for Loss of Consortium

Since NACCO is entitled to a summary judgment on all of Mr. Vaughn's claims, it also is entitled to a summary judgment on Jean Vaughn's claim for loss of consortium. The consortium claim is, of course, a derivative claim that cannot survive the entry of summary judgment on Mr. Vaughn's claims. See, e.g., Flying J Fish Farm v. Peoples Bank of Greensboro, 12 So.3d 1185, 1196 (Ala. 2008).

23

CONCLUSION

For all of the reasons discussed above, the motion for summary judgment of the defendant, NACCO Materials Handling Group, Inc., is due to be granted.  NACCO requests the Court to enter an order granting a summary judgment on all claims.

s/ George W. Royer, Jr.
George W. Royer, Jr.

s/ P. Scott Arnston
P. Scott Arnston

LANIER FORD SHAVER & PAYNE P.C.
2101 West Clinton Avenue, Suite 102
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100
gwr@LanierFord.com
psa@LanierFord.com

Attorneys for Defendant NACCO Materials Handling Group, Inc.,
successor by merger to Hyster Company

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

M. Clay Alspaugh
SMITH & ALSPAUGH, P.C.
505 North 20th Street
1100 Financial Center
Birmingham, Alabama 35203

J. Lee Roberts
TURNBACH, WARREN, ROBERTS & LLOYD, P.C.
200 Chestnut Street, Suite A
Gadsden, Alabama 35902

Joseph T. Brasher
HAMILTON, WESTBY, ANTONOWICH & ANDERSON
600 West Peachtree Street
Suite 1700
Atlanta, Georgia 30308

on this the 4th day of August, 2010.

s/ George W. Royer, Jr.
George W. Royer, Jr.

25